IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| TYRRELL CECIL PETE | § | |
| VS. | § | CIVIL ACTION NO. 9:20-CV-232 |
| DIRECTOR, TDCJ-CID | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Petitioner, Tyrrell Cecil Pete, an inmate currently confined at the Gib Lewis Unit of the Texas Department of Criminal Justice, Correctional Institutions Division, represented by counsel, filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1]

The above-styled action was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636 and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to the United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Procedural Background

Petitioner is currently confined pursuant to a judgment and sentence for aggravated assault in the 252nd District Court of Jefferson County, Texas. *The State of Texas v. Tyrrell Cecil Pete*, No. 13-17922 (doc. #11-34). Petitioner pleaded not guilty and his first trial ended in a mistrial. After retrial, the jury found Petitioner guilty and sentenced him to a thirty year term of imprisonment.

Petitioner appealed his conviction and sentence which was affirmed September 26, 2018. *Pete v. State*, No. 09-16-00370-CR, 2018 WL 4608230 (Tex. App. – Beaumont 2018, no pet. ref'd) (doc. #11-1, 11-2 & 11-3). Petitioner filed a petition for discretionary review with the Texas Court of Criminal Appeals ("TCCA") which was refused on February 6, 2019 (doc. #11-12).

---

[1] Petitioner was originally represented by James Philip Spencer, II. Bryan Laine substituted as counsel of record on May 1, 2023 (doc. #34).

Petitioner then filed a state application for writ of habeas which was denied with a written order on February 5, 2020. *Ex parte Pete*, WR-90,332-02 (doc. #11-31).[2]  This federal petition followed.

<u>Factual Background</u>

The following excerpt is taken from the appellate court opinion, summarizing the factual background:

> On October 4, 2013, Pete undisputedly shot and seriously injured J.S.  What prompted the shooting is in dispute.  There are two different versions of the events, one from J.S. and his sister C.C., and the other from Pete and his wife, O.P.  Pete's former mother-in-law also testified.  She was not directly involved with the parties' confrontation, but Pete contacted her several times throughout the morning prior to the shooting.
>
> Pete and his wife operate a deli inside a gas station named Fuel Depot.  C.C. testified she stopped by Fuel Depot the morning of the shooting to use the ATM.  C.C. was sitting in her car when Pete pulled up next to her in his car.  While sitting in their respective vehicles, C.C. and Pete, who was a good friend of C.C.'s husband, began a conversation about C.C. becoming romantically involved with another man while her husband was in prison.  The conversation became heated, and both exited their vehicles and stood in the parking lot arguing.  Pete's wife came out of Fuel Depot to intervene and told Pete to leave.  C.C. testified that as Pete turned to leave, he told her he was coming back and "[h]e had something for [her.]"  While C.C. understood Pete's statement as a threat, C.C. testified she never asked her brother or brother-in-law, M.D., to go look for Pete or seek revenge.  C.C. never saw J.S. or M.D. with a gun the day of the shooting.
>
> According to J.S., the morning of the shooting M.D. informed him Pete threatened to kill C.C.  J.S. told the jury he had just seen C.C. at the Fuel Depot, and C.C. did not appear to be upset.  Later, J.S. and M.D. saw Pete on the road, pulled up next to him and asked him what happened between him and C.C.  According to J.S., Pete told the men C.C. was lying about him threatening her.  Pete told them C.C. approached him outside the Fuel Depot complaining that Pete was supposed to send her money while her husband was incarcerated.  J.S. told the jury Pete did not appear mad after their conversation.
>
> J.S. testified that he and M.D. then returned to M.D.'s house.  While M.D. was inside the house, J.S. and another acquaintance were sitting on M.D.'s front porch.  Pete then pulled up to M.D.'s house and stated he heard J.S. and M.D. were looking for him, which J.S. denied.  After Pete repeatedly stated that he heard J.S. and M.D. were looking for him, J.S. told Pete to leave.  When Pete refused, J.S. left the porch and began walking towards Pete's vehicle.  According to J.S., Pete told him not to come

---

[2] The written order noted Petitioner raised fifty-four grounds for relief in the initial application, and that sixteen additional grounds were raised in a supplemental application.  The TCCA stated "[t]his Court has made an independent review of the record and concludes that all of these claims lack merit."  *Id*.

near his car. J.S. denied he had a weapon on him at the time and further denied telling Pete he had a gun or threatening Pete in any way. After Pete continued to refuse to leave, J.S. turned and began to walk away. In the meantime, M.D. came out of the house and told Pete to leave. J.S. testified Pete climbed out of his car and suddenly started shooting, first toward M.D., then toward J.S. Pete shot J.S. several times in the back causing him serious bodily injury. Pete then drove off in his car.

Pete testified in his defense and provided a different version of events. Pete claimed as soon as he pulled up to Fuel Depot, C.C. instigated an argument, telling him he was to take care of her because her incarcerated husband, Pete's friend, told her that Pete would help her. Pete's wife then came outside and intervened. As Pete was leaving, C.C. allegedly called her brothers and told them to take care of Pete. Soon after leaving Fuel Depot, Pete said he encountered J.S. and M.D. in a car on the road. Per Pete's testimony, J.S. got out of the car and started to approach Pete's car, and M.D. got out of the same car with a gun. Pete left and called his former mother-in-law asking her to contact C.C., J.S. and M.D.'s family to have them stop threatening him because he was scared. Pete then returned to Fuel Depot, where he claimed his wife told him about someone coming in the store and threatening their family. Pete made more calls to his ex-mother-in-law wherein Pete explained that he felt further threatened. In response to the escalated situation, Pete decided to find J.S. and M.D. to work out the issue.

Pete testified that as he was driving down the street, J.S. came off M.D.'s porch, flagged Pete down in the middle of the street with a hand behind his back, and threatened Pete and his family repeatedly. Pete told the jury he asked J.S. not to come up to Pete's vehicle with his hands behind his back. Pete explained while he and J.S. argued for a couple minutes, M.D. came out of his house with something in his hands, jumped off his porch, and began walking towards Pete followed by another man who was also at the house. Pete became fearful for his life. Pete claimed J.S. reached for Pete's vehicle and opened the driver's door. Because he and J.S. were arguing, and M.D. and the other man were coming towards him, Pete reached under the seat of his vehicle and retrieved a gun. Pete expressed that he thought, "it was either me or him[,]" and he began firing the gun. Pete did not aim at anyone or anything, he just shot in the direction of M.D. first and then J.S. According to Pete, he felt his actions were immediately necessary to protect himself.

Pete's wife, O.P., testified to her observations at Fuel Depot. O.P. recalled C.C. coming in the store twice, then sitting in her car outside the store as Pete drove up and exited his car. Pete and C.C. then began arguing. O.P. went outside; she said C.C. claimed Pete told her husband he would take care of her and pay her bills. Pete's wife indicated the argument escalated to C.C. threatening Pete and his family. O.P. testified that later, another woman came into Fuel Depot looking for Pete and told O.P. "We" knew where her kids attended school, threatened the family, and told her that they had already gotten her house. O.P. learned soon thereafter her house had been vandalized.

Pete's former mother-in-law testified that on the day J.S. got shot, Pete called her upset and asked her to contact C.C.'s mother to tell C.C.'s family to leave him alone. After speaking with C.C., Pete's former mother-in-law spoke with Pete again and suggested Pete leave the matter alone. In another call, Pete insisted she tell C.C.'s family to leave him alone and claimed that in addition to J.S. and M.D. threatening him, J.S. and M.D. went to the Fuel Depot and threatened his wife. Pete told his

3

former mother-in-law he would not allow them to do this. Pete also claimed M.D. had a gun when he threatened him. Then, according to Pete's former mother-in-law, Pete called her back and told her if they continued to bother his wife and his family, he was "going to shoot them."

During closing arguments, Pete's counsel acknowledged Pete shot J.S., but emphasized Pete feared for his life and claimed he tried to elicit help from his former mother-in-law to disarm the situation. When it did not work and after Pete tried to discuss the matter with J.S., Pete felt it necessary to shoot to save his own life. The State urged the jury to believe C.C.'s and J.S.'s versions of the events and find Pete guilty of the offense. The State asserted if all the threats against Pete and his family were true, Pete should have contacted the police rather than take matters into his own hands. The State rejected Pete's claim he shot J.S. out of necessity. The jury did as well and found Pete guilty of aggravated assault, sentencing him to thirty years.

*Pete v. State*, No. 09-16-00370-CR, 2018 WL 4608230, *2-7 (doc. #11-1).

<u>The Petition</u>

Petitioner asserts the following points of error:

1.    The State violated his right against double jeopardy by retrying him after a mistrial and forcing the jury back into deliberations after they found him not guilty;

2.    Legally and factually insufficient evidence supported his conviction because the State did not prove the bullets hitting the victim came from his weapon;

3.    The State committed a *Brady* violation by failing to disclose (a) ballistics evidence, (b) the victim's toxicology report, (c) reports of police activity at the victim's address, (d) a copy of his wife's 911 call, and (e) prosecutorial records involving a co-complainant;

4.    The trial court erred by (a) not striking a juror for cause, (b) by engaging in *ex parte* communication with the jury, and (c) allowing questions concerning details of Petitioner's prior convictions;

5.    Petitioner was deprived effective assistance of counsel because counsel (a) failed to move to strike a juror for cause, (b) failed to object to the venue or request a new judge, (c) failed to object to his retrial double jeopardy grounds, (d) failed to sufficiently investigate his case, (e) failed to request a jury instruction for the lesser included offense of deadly conduct, (f) failed to object to hearsay and speculative testimony, (g) failed to impeach a witness with inconsistent testimony, (h) failed to object to the State's exhibits of a bullet and bullet fragment, (i) failed to object to prosecutor's cross-examination of Petitioner concerning veracity of another witnesses' testimony, (j) failed to object to questions regarding Petitioner's criminal history, (k) failed to object to improper closing argument by the prosecution, (l) failed to object to jury charge definitions, (m) failed to object to a lack of "multiple assailants" jury instruction, (n) failed to object to jury documents discussing parole and good time, and (o) sought a mistrial instead of asking to continue the trial with eleven jurors;

4

6.   Petitioner was constructively denied trial and appellate counsel based on various deficiencies in counsel's performance;

7.   Petitioner received ineffective assistance of appellate counsel due to appellate counsel's failure to pursue various claims;

8.   The appeal court denied Petitioner a meaningful appeal because it did not provide him a transcript of a pretrial hearing;

9.   The prosecution erred by making false statements and making an improper closing argument;

10.  The trial court was biased against him because she worked with the victim's wife; and

11.  Petitioner was denied his right to a jury to make the deadly weapon finding.

<u>The Response</u>

Respondent filed an Answer on March 12, 2021, along with the state court records (doc. #13).  Respondent argues the majority of Petitioner's claims lack merit or are procedurally barred. *Id*.  To date, Petitioner has yet to file a Reply to the Response.[3]

<u>Standard of Review</u>

Title 28 U.S.C. § 2254(a) allows a district court to "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

Section 2254 generally prohibits a petitioner from re-litigating issues that were adjudicated on the merits in State court proceedings, with two exceptions. *See* 28 U.S.C. § 2254(d).  The first exception allows a petitioner to raise issues previously litigated in the State court in federal habeas proceedings if the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  The second exception permits re-litigation if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in

---

[3] Petitioner has also failed to file a Reply to Respondent's Supplemental Answer to Petitioner's Second Amended Complaint as discussed below.

light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  Federal habeas relief from a state court's determination is precluded "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

Federal habeas courts are not an alternative forum for trying facts and issues which were insufficiently developed in state proceedings.  *Williams v. Taylor*, 529 U.S. 420, 437 (2000). Further, following the Supreme Court's decision in *Cullen v. Pinholster*, federal habeas review under 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits."  563 U.S. 170, 181 (2011).

A decision is contrary to clearly established federal law if the state reaches a conclusion opposite to a decision reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *See Williams*, 529 U.S. at 412-13.  An application of clearly established federal law is unreasonable if the state court identifies the correct governing legal principle, but unreasonably applies that principle to the facts.  *Id.*  Under this standard, an unreasonable application is more than merely incorrect or erroneous; rather, the state court's application of clearly established law must be "objectively unreasonable." *Williams*, 529 U.S. at 409.  The focus of this objective reasonableness inquiry is on the state court's ultimate decision, not whether the state court "discussed every angle of the evidence." *Dale v. Quarterman*, 553 F.3d 876, 879 (5th Cir. 2008) (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (*en banc*)), *cert. denied*, 558 U.S. 847 (2009).  "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 562 U.S. at 102.

The deferential Antiterrorism and Effective Death Penalty Act ("AEDPA") standard of review applies even where the state court fails to cite applicable controlling Supreme Court precedent or fails to explain its decision.  *See Early v. Packer*, 537 U.S. 3, 8-9 (2002).  Likewise, "[b]ecause a federal habeas court only reviews the reasonableness of the state court's ultimate

decision, the AEDPA inquiry is not altered when ... state habeas relief is denied without [a written] opinion." *Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003). For such a situation, a reviewing court (1) assumes the state court applied the proper "clearly established Federal law" and (2) then determines whether its decision was "contrary to" or "an objectively unreasonable application of" that law. *Id.* (citing *Catalan v. Cockrell*, 315 F.3d 491, 493 & n.3 (5th Cir. 2002)). "[A] federal habeas court has 'no authority to grant habeas corpus relief simply because [it] conclude[s] in [its] independent judgment, that a state supreme court's application of [clearly established federal law] is erroneous or incorrect.'" *Kossie v. Thaler*, 423 F. App'x 434, 436 (5th Cir. 2011) (quoting *Neal v. Puckett*, 286 F.3d 230, 236 (5th Cir. 2002)).

This court must accept as correct any factual determinations made by the state courts unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e). The presumption of correctness applies to both implicit and explicit factual findings. *See Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004); *Valdez v. Cockrell*, 274 F.3d 941, 948 n. 11 (5th Cir. 2001) ("The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact."). Deference to the factual findings of a state court is not dependent upon the quality of the state court's evidentiary hearing. *See Valdez*, 274 F.3d at 951 (holding that a full and fair hearing is not a precondition according to § 2254(e)(1)'s presumption of correctness to state habeas court findings of fact nor to applying § 2254(d)'s standards of review).

<u>Analysis</u>

*I.    Double Jeopardy*

Petitioner's claim of double jeopardy arises in the context wherein during Petitioner's initial trial, one of the jurors realized that she had treated the victim in the hospital and then disclosed that to the trial court.[4] Petitioner than requested a mistrial on the grounds that the juror had personal knowledge of one of the elements of the offense, namely the element of serious bodily injury. The

---

[4] Petitioner was represented by attorney Mike Laird during the first trial.

trial court granted the request. Although less than clear, Petitioner now appears to argue the State

goaded the defense to ask for a mistrial because the "State sequestered all their witnesses and failed

to name an expert witness they would call during voir dire."

> Prosecutorial conduct that might be viewed as harassment or overreaching, even if
> sufficient to justify a mistrial on defendant's motion, therefore, does not bar retrial
> absent intent on the part of the prosecutor to subvert the protections afforded by the
> Double Jeopardy Clause. A defendant's motion for a mistrial constitutes 'a
> deliberate election on his part to forgo his valued right to have his guilt or innocence
> determined before the first trier of fact.' Where prosecutorial error even of a degree
> sufficient to warrant a mistrial has occurred, '[t]he important consideration for
> purposes of the Double Jeopardy Clause, is that the defendant retain primary control
> over the course to be followed in the event of such error. Only where the
> governmental conduct in question is intended to 'goad' the defendant into moving
> for a mistrial may a defendant raise the bar of double jeopardy to a second trial after
> having succeeded in aborting the first on his own motion.

*Oregon v. Kennedy*, 456 U.S. 667, 676 (1982) (citations omitted). "'Goading' is narrowly defined,

and '[g]ross negligence by the prosecutor, or even intentional conduct that seriously prejudices the

defense, is insufficient.'" *United States v. Buck*, 847 F.3d 267, 272 (5th Cir. 2017) (citing *United

States v. El-Mezain*, 664 F.3d 467, 561 (5th Cir. 2011). "Instead, there must be 'intent on the part

of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause.'" *Id*. (citing *El-

Mezain*, 664 F.3d at 561) (quoting *United States v. Wharton*, 320 F.3d 526, 531-32 (5th Cir. 2003)).

The record here establishes the prosecution was surprised by the juror's revelation that she

was involved in the victim's treatment at the hospital. Reporter's Record ("RR"), Vol. 1, Court

Grants Mistrial, pgs. 33-34 (doc. #11-35). Petitioner's assertion that State "goaded" the defense to

ask for a mistrial by sequestering witnesses lacks sufficient factual support that the State acted with

the "intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy

Clause." "The 'objective facts and circumstances' in this case do not suggest that the prosecutor[]

engaged in 'conduct . . . intended to provoke the defendant into moving for a mistrial.'" *Buck*, 847

F.3d at 273 (citing *Kennedy*, 456 U.S. at 679). Petitioner has failed to show the decision by the

TCCA in denying this claim resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established federal law, or resulted in a decision based on an unreasonable

determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d). This

claim should be denied.

II.     *Insufficiency of the Evidence*

Petitioner alleges there is legally and factually insufficient evidence to support his conviction. Respondent argues that Petitioner's factual insufficiency claim is not cognizable in a federal habeas proceeding and that he has failed to exhaust his claim attacking the legal sufficiency of the evidence. With respect to his "factual insufficiency" claim, it is well settled that "factual sufficiency" of the evidence is a creation of Texas state law, *see Clewis v. State*, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996), and therefore is not cognizable as a basis for relief in a § 2254 petition. *See* 28 U.S.C. § 2254(a) & (d)(1); *Woods v. Cockrell*, 307 F.3d 353, 358 (5th Cir. 2002).

With respect to Petitioner's claim that the evidence was legally insufficient to support the jury's verdict, Petitioner failed to raise this on direct appeal. Petitioner, rather, raised it for the first time in his state application for writ of habeas corpus. Under Texas law, it has long been held that challenges to the sufficiency of the evidence of a conviction must be raised on direct appeal. *See ex parte McLain*, 869 S.W.2d 349, 350 (Tex. Crim. App. 1994) (holding evidentiary sufficiency claims not cognizable in post-conviction, collateral attack); *West v. Johnson*, 92 F.3d 1385, 1389 n. 18 (5th Cir. 1996) (recognizing the long-standing legal principle under Texas law that sufficiency of the evidence may only be raised on direct appeal, and may not be raised in state habeas). The failure to raise this claim on direct appeal constitutes a procedural default under Texas law that may bar this court from reviewing the claim on federal habeas review. *Renz v. Scott*, 28 F.3d 431, 432 (5th Cir. 1994). Moreover, when the TCCA here denied Petitioner's state application for writ of habeas corpus without written order, it implicitly denied the sufficiency claim on the procedural basis that such a claim is not cognizable on state habeas review. *See ex parte Grigsby*, 137 S.W.3d 673, 674 (Tex. Crim. App. 2004) ("Therefore, today, we reaffirm our holding that where an applicant challenges the sufficiency of the evidence on an application for a writ of habeas corpus, and we subsequently dispose of the application by entering a denial without written order, the applicant's sufficiency claim was denied because the claim is not cognizable.").

9

In this instance, Petitioner has procedurally defaulted his legal sufficiency claim under Texas law.  Such a default constitutes an adequate and independent state procedural ground to bar federal habeas review.  When a petitioner fails to properly exhaust his claim of legal insufficiency, the court may find the claim procedurally barred if the "time to file a petition for discretionary review has expired." *Haley v. Cockrell*, 306 F.3d 257, 264 (5th Cir. 2002) (citing TEX. R. APP. P. 68.2), *vacated on other grounds*, 541 U.S. 386 (2004).  Moreover, Petitioner has failed to overcome this procedural bar as he has failed to show cause and prejudice or a fundamental miscarriage of justice.  *Smith v. Johnson*, 216 F.3d 521, 524 (5th Cir. 2000).  This claim should be denied as procedurally barred.

III.     *Brady Violations*

Petitioner alleges the State committed a *Brady* violation by failing to disclose (a) ballistics evidence, (b) the victim's toxicology report, (c) reports of police activity at the victim's address, (d) a copy of his wife's 911 call, and (e) prosecutorial records involving a co-complainant.

"[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  To establish a Brady violation, a petitioner must demonstrate that (1) the prosecution suppressed evidence, (2) the evidence was favorable to the defense, and (3) the evidence was material to either guilt or punishment.  *Banks v. Dretke*, 540 U.S. 668, 691 (2004); *Graves v. Cockrell*, 351 F.3d 143, 153-54 (5th Cir. 2003).  Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  *United States v. Bagley*, 473 U.S. 667, 682 (1985); *see also Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993) (constitutional error does not warrant reversal unless the error "had substantial and injurious effect or influence in determining the jury's verdict.").

With respect to the ballistic evidence, Petitioner argues the State failed to furnish him with forensic tests of a bullet slug and bullet fragment that were taken from the crime scene, namely, State's Exhibit Numbers 6 and 7.  Testimony during the trial revealed that additional testing was

conducted on these exhibits. *See* RR, Vol. 3, pgs. 115-120 (doc. #11-16). The State provided the firearms report during the state habeas proceedings and the report was able to confirm that the slug and eight cartridge cases likely came from a 9mm firearm, but was unable to conclude that they were fired from a specific type of firearm. State Habeas Exhibit 2, Crime Lab Firearms Report, pgs. 21-22 (doc. #11-35).[5] As the report held no exculpatory value, the report did not constitute "favorable" evidence under *Brady*.[6] More importantly, the report is immaterial. As outlined above, Petitioner admitted he shot the victim and his defense focused on necessity. RR, Vol. 3, pg. 164 (doc. #11-16); RR, Vol. 4, pgs. 13-23 (doc. #11-17). As the origin of the bullets was not in dispute, this *Brady* claim fails on the materiality element as well. Petitioner has failed to show the decision by the TCCA in denying this claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in state court.

With respect to Petitioner's claims that the State withheld the victim's toxicology report, evidence of policy activity or disturbance calls from the 2700 Block of Euclid where the incident occurred, and a copy of his wife's 911 call, there is nothing in the present record that indicates these reports even existed, let alone that they were material to the defense, or that the State possessed them and failed to disclose them to the defense. Conclusory allegations unsupported by any specific facts do not merit a federal court's attention. *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983); *Koch*

---

[5] The Report stated, "[t]he Item 1A fired bullet was determined to be a .38/9mm caliber class bullet (most consistent with 9mm) which has been fired through a firearm having a barrel rifled with six (6) lands and grooves inclined to the right. The list of possible firearms that could have fired Item 1A was too inclusive to be of any investigative value; however, a complete list will be maintained in the case file. Item 1B is a fragment of copper jacket of undetermined caliber that lacks sufficient individual as well as class characteristics and was unsuitable for comparison to item 1A. The exhibit 2 fired cartridge cases were microscopically examined and identified as all having been fired in the same unknown firearm based on individual characteristics and all discernible class characteristics. In the event that Item 1A and exhibit 2 fired cartridge cases were fired in/from the same unknown firearm, the list of possible firearms generated was still too inclusive to be of any investigative aid; however a complete list of the search results will be maintained in the case folder." *Id*.

[6] The court notes there was no objection by trial counsel when this evidence was admitted during trial. Moreover, during state habeas review, the prosecution, by way of affidavit, stated he held an open door policy on discovery and that any and all discovery was made available to defense counsel. Affidavit, pg. 24 (doc. #11-35).

*v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) ("mere conclusory allegations on critical issues are insufficient to raise a constitutional claim."). As such, these three claims of a *Brady* violation should be denied as conclusory.

As to Petitioner's final claim of a *Brady* violation, namely that the State failed to disclose prosecutorial records involving the co-complainant, any such claim should be denied as unexhausted and procedurally defaulted and, alternatively, as conclusory. First, as with the three previous claims, there is nothing in the record to suggest that any such records regarding the co-complainant exist, let alone that they are material to the defense, and that the State somehow failed to disclose them to Petitioner. Like the others, this claim is conclusory and should be denied. Second, Petitioner failed to assert this claim in his state application for writ of habeas corpus, thus preventing the TCCA from a fair opportunity to act on this claim before presented to this court. Furthermore, any such claim would be procedurally barred as Texas law does not permit a successive application for writ of habeas corpus unless the applicant establishes extraordinary circumstances. *See* TEX. CODE CRIM. PROC. ART. 11.07, § 4; *Neville v. Drekte*, 423 F.3d 474, 480 (5th Cir. 2005) (holding that the unexhausted claims have been procedurally defaulted since they cannot be raised in Texas state court). Petitioner has also failed to show cause and prejudice for the procedural default, or a fundamental miscarriage of justice. This claim should be denied.

IV.    *Trial Court Error*

Petitioner next alleges the trial court erred by (a) not striking a juror for cause, (b) by engaging in *ex parte* communication with the jury, and (c) allowing questions concerning details of Petitioner's prior convictions. As with several of Petitioner's claims, Petitioner's first two claims of trial court error are unexhausted and procedurally barred as Petitioner failed to fairly present them to the state habeas court for consideration. *See* TEX. CODE CRIM. PROC. ART. 11.07, § 4; *Neville*, 423 F.3d at 480.

"A state court's evidentiary rulings present cognizable habeas claims only if they run afoul of a specific constitutional right or render the petitioner's trial fundamentally unfair." *Johnson v.*

*Puckett*, 176 F.3d 809, 820 (5th Cir. 2009). The test to determine whether a trial error makes a trial fundamentally unfair is whether there is a reasonable probability that the verdict might have been different had the trial been properly conducted. The appellate court, here, considered Petitioner's third claim of trial court error on appeal and noted the following:

> Pete argues in his second issue the trial court erred by allowing the State to cross-examine him about the underlying facts of his prior convictions for arson and drug possession. Pete testified at trial. When explaining why he should not have had a gun, Pete's counsel asked him about being a convicted felon. Pete then stated he pled guilty to arson and drug possession charges and served time for those offenses. In addition, defense counsel asked Pete whether his prior convictions were crimes of violence, to which Pete responded, "No[.]"
>
> The State then cross-examined Pete and asked several questions about the details of the crimes underlying each conviction. Pete explained the arson conviction arose after a man stole his ex-wife's purse from inside their car. In response, Pete and another person burned the thief's car. When asked whether Pete considered that reaction not to be an act of violence, Pete responded that "nobody got hurt. The car got burned." Next, the State inquired as to Pete's drug charge, which Pete said was a federal charge for possession of cocaine. Pete also admitted he both used and sold cocaine before his conviction. When the State asked how long he sold drugs, defense counsel objected claiming the information the State sought was outside the scope of Texas Rules of Evidence Rule 609. The trial court overruled the objection. The State then asked Pete further details of each conviction and specifically, why he did not contact the police when his ex-wife's purse was stolen instead of taking matters into his own hands.
>
> Pete contends on appeal the trial court erred by allowing the State to elicit details of his prior felony offenses because the evidence was not elicited to question Pete's credibility, but rather to convict him based on the extraneous conduct itself. The State referenced the arson charge in its closing argument to draw the comparison in that case to Pete's decision here to not contact the police for assistance because of the alleged threats against his family but rather take matters into his own hands and retaliate.
>
> Rule of Evidence 609 permits the admission of evidence of the fact of a prior felony conviction offered to attack a witness's character for truthfulness. TEX. R. EVID. 609(a). However, the details of the prior conviction are generally inadmissible for purposes of impeachment. *Mays v. State*, 726 S.W.2d 937, 953 (Tex. Crim. App. 1986); *Arebalo v. State*, 143 S.W.3d 402, 407 (Tex. App.—Austin 2004, pet. ref'd). "This is because evidence of prior convictions and extraneous bad acts 'is inherently prejudicial, tends to confuse the issues in the case, and forces the accused to defend himself against charges which he had not been notified would be brought against him.'" *Arebalo*, 143 S.W.3d at 407 (quoting *Albrecht v. State*, 486 S.W.2d 97, 100 (Tex. Crim. App. 1972)).
>
> Error in the admission of evidence is non-constitutional error subject to a harm analysis under Texas Rule of Appellate Procedure 44.2(b). *Jabari v. State*, 273 S.W.3d 745, 754 (Tex. App.—Houston [1st Dist.] 2008, no pet.); *see also* TEX. R.

APP. P. 44.2(b).  We disregard any non-constitutional error that does not affect the
defendant's substantial rights.  TEX. R. APP. P. 44.2(b); *Jabari*, 273 S.W.3d at 754.
"A substantial right is affected when the error had a substantial and injurious effect
or influence in determining the jury's verdict." *Jabari*, 273 S.W.3d at 754 (citing
*Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000)).  We will not overturn
a conviction for non-constitutional error if the court, after examining the record as
a whole, has fair assurance that the error did not influence the jury or had but slight
effect.  *Id*. (citing *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998)).
"The improper admission of evidence does not constitute reversible error if other
properly admitted testimony proves the same facts." *Id*.

Several witnesses testified Pete initiated an argument with C.C. that escalated.  Pete's
ex-mother-in-law explained that while Pete contacted her several times and expressed
he was both fearful and angry after receiving the alleged threats against him and his
family, Pete told her he would shoot them if he or his family were threatened.  It is
undisputed Pete shot J.S.; the case hinged on whether Pete felt he had to shoot J.S.
out of necessity, which was dependent upon which version of events the jury believed
leading to Pete being present at M.D.'s house when the shooting occurred.

Based on the record as a whole, while Pete provided brief testimony about the details
of his prior convictions, which included several details that were undisputedly not
objected to, the State presented strong evidence of the charged offense.  We conclude
the trial court's error in allowing the State to elicit details of Pete's prior convictions
did not have a substantial or injurious effect in determining the jury's verdict and did
not affect Pete's substantial rights.  *See* TEX. R. APP. P. 44.2(b); *Jabari*, 273 S.W.3d
at 754 (holding that trial court's error in allowing details of defendant's prior
convictions was harmless because "[a]mple other evidence existed on which the jury
could have found [defendant] guilty").  We overrule Pete's second issue and affirm
the trial court's judgment.

*Pete,* 2018 WL 4608230, *10-14 (doc. #11-1).

On federal habeas review, Petitioner again has failed to show that the trial court's ruling

rendered his trial fundamentally unfair, especially in light of the ample evidence of his guilt.

Petitioner has not shown that in denying this claim, the decision that was contrary to, or involved an

unreasonable application of, clearly established federal law, or resulted in a decision based on an

unreasonable determination of the facts in light of the evidence presented in state court.  This claim

should be denied.

V.    *Ineffective Assistance of Counsel*

Petitioner argues several claims of ineffective assistance of counsel.  Specifically, Petitioner

argues counsel (a) failed to move to strike a juror for cause, (b) failed to object to the venue or

request a new judge, (c) failed to object to his retrial double jeopardy grounds, (d) failed to

sufficiently investigate his case, (e) failed to request a jury instruction for the lesser included offense of deadly conduct, (f) failed to object to hearsay and speculative testimony, (g) failed to impeach a witness with inconsistent testimony, (h) failed to object to the State's exhibits of a bullet and bullet fragment, (i) failed to object to prosecutor's cross-examination of Petitioner concerning veracity of another witnesses' testimony, (j) failed to object to questions regarding Petitioner's criminal history, (k) failed to object to improper closing argument by the prosecution, (l) failed to object to jury charge definitions, (m) failed to object to a lack of "multiple assailants" jury instruction, (n) failed to object to jury documents discussing parole and good time, and (o) sought a mistrial instead of asking to continue the trial with eleven jurors.  For the foregoing reasons, all of Petitioner's claims of ineffective assistance of counsel should be denied.

### A.    Substantive Law

Federal claims of ineffective assistance of counsel are subject to the highly deferential two-prong standard of *Strickland v. Washington*, 466 U.S. 668 (1984), which asks: (1) whether counsel was deficient in representing Petitioner; and (2) whether counsel's alleged deficiency prejudiced the defense so as to deprive Petitioner of a fair trial. *Id*. at 687.  To meet the first prong, Petitioner must establish that his attorney's representation "fell below an objective standard of reasonableness," and must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, [he] must overcome the presumption that . . . the challenged action 'might be considered sound trial strategy.'" *Id*. at 688–89.  The "prejudice" component of the claim "focuses on the question of whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).  Prejudice, under *Strickland*, requires showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.

As discussed above, a federal court may not grant habeas relief on a claim that has been rejected on the merits by a state court, unless the petitioner shows that the state court's decision "was contrary to" law clearly established by the United States Supreme Court, that it "involved an unreasonable application of" such law, or that it "was based on an unreasonable determination of the facts" in light of the record before the state court. 28 U.S.C. §§ 2254 (d)(1) and (2); *Williams*, 529 U.S. at 412. Thus, when an exhausted claim of ineffective assistance of counsel is raised in a federal habeas petition, the question to be resolved is not whether the petitioner's counsel was ineffective. Rather, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, 562 U.S. at 101. As the Supreme Court clarified in *Harrington*,

> This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Id*. (internal quotation marks and citation omitted).

## B.    Application

### 1.    *Failure to Strike a Juror for Cause*

Petitioner asserts that trial counsel was ineffective in failing to move to strike a juror due to her familial relationship to the victim. Here, the juror at issue identified herself as the great aunt of the victim's daughter. RR, Vol. 3, pg. 9 (doc. #11-16). She testified she had no contact with Petitioner, she did not know he was injured, and knew nothing about the case made the incident of the criminal proceedings. *Id*., pgs. 9-10. And while she worked at a neighborhood grocery store and knew that both the victim's family and Petitioner's family were all customers there, she affirmatively stated that there was nothing about her relationship between her grand niece and the victim that would affect her ability to serve as a fair and impartial juror in this case. *Id*., pg. 10. Trial counsel

16

questioned this juror in more detail:

MR. GERTZ:          You said too, though, your job in the grocery store --

VENIREPERSON:    Just as a cashier.

MR. GERTZ:          I understand, but you see both families on a regular basis?

VENIREPRESON:    Not – have been because I've been at that store for 37 years. They were customers of that store. That store has been taken over by a new owner, and I have not – in the last five years I haven't seen any of the family, but they were – they did shop at the grocery store I worked at.

MR. GERTZ:          But I guess what I want to know is would the relationship or your knowledge of these families make it difficult for you?

VENIREPERSON:    No because I didn't know them no more than just as a customer in the store.

*Id.*, pgs. 10-11.

A juror is biased if his views would prevent or substantially impair the performance of his duties. *Soria v. Johnson*, 207 F.3d 232, 242 (5th Cir. 2000). If a juror is not biased, counsel's failure to challenge that juror does not support a claim for ineffective assistance of counsel. *Virgil v. Dretke*, 446 F.3d 598, 608-09 (5th Cir. 2006). Having considered the juror's response, and absent clear and convincing evidence in rebuttal, this court defers to the state court's factual findings on this issue. 28 U.S.C. § 2254(e)(1). Applying the appropriate deference, the findings by the TCCA is neither an unreasonable application of *Strickland* nor unreasonable in light of the evidence presented in state court. Generally, decisions made by counsel during voir dire are considered to be matters of trial strategy. *Teague v. Scott*, 60 F.3d 1167, 1172 (5th Cir. 1995). Counsel's affidavit shows that his decision was based on the belief that the juror held no bias. Affidavit, pg. 137 (doc. #11-35). Courts recognize that trial counsel's experience and intuition are critical, drawing on insights available only through physical presence. *Romero v. Lynaugh*, 884 F.2d 871, 877 (5th Cir. 1989). Based on this record, there is no basis to find that the juror was actually or impliedly biased, that counsel's decision fell below an objective standard of reasonable performance, or that a reasonable probability exists that had counsel challenged for cause or struck the juror the result of this trial

17

would have been different. *Strickland*, 466 U.S. at 694. This claim should be denied.

    2.    *Failure to Object to the Venue or Request a New Judge*

Petitioner next asserts that his trial counsel was ineffective when he failed to seek a change of venue or recusal of the trial judge. Although less than clear, Petitioner appears to assert the basis for such a request was warranted as the trial court's probation officer, Trazarria Stelly, was allegedly the victim's wife and was able to influence the court. Trial counsel's affidavit states that he knew of no such relationship, that there is no evidence in the record that Trazarria Stelly is actually married to the victim and thus, there was no basis to seek recusal and/or a change of venue. Affidavit, pg. 138 (doc. #11-35). Based on the present record, there is no basis to support Petitioner's claim of deficient performance; counsel cannot be deemed ineffective for failing to lodge a meritless objection. *See Jackson v. Johnson*, 150 F.3d 520, 525-26 (5th Cir. 1998); *see also Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994). As Petitioner has failed to show deficient performance, this claim should be denied.

    3.    *Failure to Object on Double Jeopardy Grounds*

Petitioner asserts that his trial counsel in his second trial, Ryan Gertz, acted ineffectively when he failed to object to the second trial on double jeopardy grounds. For the reasons outlined above in discussing Petitioner's claim of double jeopardy, any such claim lacks merit. As Petitioner sought the mistrial in the first trial, and there is no evidence to support a claim that the defense was goaded into seeking a mistrial, any such claim that Petitioner's trial counsel during the second trial was ineffective for failing to object on the basis of double jeopardy lacks merit. Again, counsel cannot be deemed ineffective for failing to lodge a meritless objection. *See Jackson*, 150 F.3d at 525-26; *Clark*, 19 F.3d at 966. As Petitioner has failed to show deficient performance, this claim should be denied.

    4.    *Failure to Sufficiently Investigate His Case*

Petitioner next contends that trial counsel was ineffective for failing to reasonably investigate his case. Petitioner states that counsel failed to interview even one witness for the defense and

complains that his meetings with Petitioner "amounted to writing a receipt [sic] for payment." Petitioner alleges that his trial counsel's "entire strategy for [the] defense was: 'your going to have to testify.'" Petitioner states further, "he failed to inquire into forensic testing on recovered evidence, medical records, States expert witnesses, Charity Stelly Cophane's criminal background, or even Applicant's version of the event."

While "counsel has a duty to make a reasonable investigation of defendant's case or to make a reasonable decision that a particular investigation is unnecessary," a reasonable investigation depends in part on the information supplied by the defendant. *Ransom v. Johnson*, 126 F.3d 716, 723 (5th Cir. 1997) (citing *Strickland*, 466 U.S. at 691). And, a petitioner alleging an inadequate investigation must show what such investigation would have uncovered and how the defense would benefit from that investigation. *Nelson v. Hargett*, 989 F.2d 847, 850 (5th Cir. 1993); *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986). Here, Petitioner fails to meet his burden, offering no specifics as to who the additional witnesses were and how their testimony or additional evidence would benefit the defense. Petitioner has failed to show deficient performance and this claim should be denied.

5.    *Failure to Request a Jury Instruction for Lesser Included Offense*

Petitioner argues counsel was ineffective for failing to request a jury charge on the lesser included offense of misdemeanor deadly conduct. With respect to this claim, Petitioner merely states, "Applicant plead NOT GUILTY to the indictment, which placed burden on State to prove every element of the charge. The State failed to do so and even Mr. Gertz noted this when asking for a directed verdict. Mr. Gertz due to his own observations should have requested the jury charge to include misdemeanor deadly conduct."

With respect to a lesser included offense, "[u]nder Texas law, there is a two-step test to determine whether a lesser included offense instruction should be given: first, the lesser included offense must be within the proof necessary to establish the offense charged; second, there must be some evidence in the record that if the defendant is guilty, he is guilty only of the lesser offense."

19

*Richards v. Quarterman*, 566 F.3d 553, 568 (5th Cir. 2009). Furthermore, the decision whether to seek a lesser included offense instruction is a matter of trial strategy. It is not uncommon for defense attorneys to forego a lesser included offense instruction in an effort to pursue an "all-or-nothing" strategy with the jury verdict. *See, e.g., Ex parte White*, 160 S.W.3d 46, 55 (Tex. Crim. App. 2004) (appellant's decision to adopt all-or-nothing trial strategy in failing to request jury instruction on lesser included offenses of manslaughter and negligent homicide in murder case not unreasonable); *Shanklin v. Quarterman*, No. H-08-1111, 2009 WL 3052677, at *13 (S.D. Tex. 2009) (defense counsel could have employed all-or-nothing strategy and therefore was not ineffective for failing to request a lesser included offense instruction). Petitioner, here, fails to address the possibility that counsel acted based on sound trial strategy. *See Strickland*, 466 U.S. at 689 (stating "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"). Petitioner has failed to show deficient performance and this claim should be denied.

6.    *Failure to Object to Hearsay and Speculative Testimony*

Petitioner next alleges that trial counsel was ineffective for failing to object to hearsay or speculative testimony. First, he refers to the testimony of Officer Stocking who testified, "[t]his right here is a van that was parked on the property. One of the rounds that the suspect fired actually broke out one of the windows here." RR, Vol. 3, pg. 29 (doc. #16). Petitioner also argues that counsel should have objected to testimony from Mrs. Ryan stating, "at any rate she [the pastor's daughter] said she was on her way to Liz and Tamar house, Pete had shot Scoobie." *Id.*, pg. 68. Without determining the propriety of any objection to this testimony based on hearsay, Petitioner fails to show how he was prejudiced by its admission given he admitted he fired the gun at the scene. Petitioner, therefore, has failed to show deficient performance and prejudice and these claims should be denied.

Finally, Petitioner complains that his trial counsel failed to make a "running objection" on the basis of speculation to Mrs. Chopane's testimony. The relevant exchange is as follows:

A.    She asked me did I have a problem and no, I don't have a problem, she should be talking to her husband is what I told her and she asked that he leave and he finally did get in his car, but on his way to his car he was saying that he was coming back. He had something for me, but he eventually drove off. I went in the store and got what I needed and I left.

Q.    Now when he says that he had something for you, what do you take that to mean?

> MR. GERTZ: I'm sorry, I object to speculation.
>
> THE COURT: Sustained.
>
> MR. NICHOLS: The question was: What does she think that means.
>
> MR. GERTZ: It's still speculation. What my client means by a phrase that he says. It's speculation.
>
> THE COURT: I'm going to overrule and let her say specifically what she thought that meant to her.

Q.    What did that mean to you?

A.    I took it as he was going to get something for me, something to take care of me. I can't say specifically.

Q.    Is that a good thing or a bad thing?

A.    Well, that's a bad thing in my eyes.

RR, Vol. 3, pgs. 96-97 (#11-16). Given this full context where the court overruled the objection with clarification, Petitioner has failed to show how a request for a running objection would have benefitted his defense. Petitioner has failed to show his counsel performed deficiently and this claim should be denied.

### 7.    *Failure to Impeach a Witness*

With respect to this claim, Petitioner states the following:

Mr. Gertz failed to impeach the testimony of Mrs. Chopane by way of use of conflicting testimony. Mrs. Chopane lived on the far North side of Beaumont and Mr. Gertz failed to ask why she failed to use an ATM that would have been on her route to Orange or even get cash from the Walmart she worked at in Orange; why did she fail to give her brother, such a great guy, a ride to his destination instead of sitting in the Fuel Depot parking lot for over twenty minutes; if she felt threatened why did she exit her vehicle in the first place. Mr. Gertz also failed to inform the jury and question about Mrs. Chopane's felony conviction for causing an auto accident while under the influence of P.C.P. which killed her child and she fled the scene of the crime. The jury was allowed to judge the veracity of her testimony without the facts.

A competent attorney would have asked these questions in order to provide a defense against false statements.

Original Petition, pg. 13 (doc. #1).  Because decisions regarding the questioning and cross-examination of witnesses are strategic, they usually "will not support an ineffective assistance claim." *United States v. Bernard*, 762 F.3d 467, 472 (5th Cir. 2014) (citation omitted).  To establish deficient performance, Petitioner must not only rebut the presumption that counsel's decision was based on sound trial strategy; he must also show that counsel's performance fell below an "objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88.  But counsel will not be judged ineffective only by hindsight.  *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) ("The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight."); *Rompilla v. Beard*, 545 U.S. 374, 375 (2005) ("hindsight is discounted.").

With respect to the alleged instances involving Chopane's conduct, drug use, and prior conviction alleged by Petitioner, Petitioner's claims are entirely conclusory as he fails to point to anything in the record that supports such "impeachment evidence." *Ross*, 694 F.2d at 1011.  Furthermore, counsel in his affidavit averred that he was unaware of any such allegations, suggested that such evidence may not be admissible, and regardless he did not think such questions would be strategically helpful.  Affidavit, pgs. 140-41 (doc. #11-35).  Petitioner has failed to rebut the presumption that counsel's decision was based on sound trial strategy and this claim should be denied.

### 8.  *Failure to Object to State's Bullet Exhibits*

Petitioner alleges that trial counsel was ineffective in failing to object to the State's exhibits consisting of a bullet slug and bullet fragment.  Petitioner asserts these exhibits should not have been admitted based on incomplete chain of custody and were "false evidence."  But, "[a]bsent evidence of tampering, issues regarding the chain of custody bear on the weight, rather than on the admissibility, of evidence." *Davis v. State*, 313 S.W.3d 317, 348 (Tex. Crim. App. 2010).  In his affidavit, trial counsel stated that regardless, his strategic defense was that Petitioner acted out of self-defense and necessity, and "[a]s such, quibbling about chain of custody witnesses would have

22

less than no value to the Court or the jury." Petitioner again has failed to rebut the presumption that counsel's decision was based on sound trial strategy and this claim should be denied.

9.      *Failure to Object to Prosecutor's Cross-Examination*

Petitioner alleges further that trial counsel performed ineffectively by not objecting to the prosecutor's cross-examination of Petitioner concerning whether Pete thought Ryan was being truthful. RR, Vol. 3, pg. 169 (doc. #11-16). Petitioner states, "[a]pparently, Mrs. Ryan's testimony was not entirely helpful to the Prosecutor's cause so he attempted to get Applicant to impeach her in order to undo the favorable testimony she gave. Mr. Gertz failed to act once again and Prosecutor made Applicant look foolish as he stated that he did not make the alleged statement but refused to say Mrs. Ryan was being untruthful in her perception of the conversation." It is unclear on what basis Petitioner thought this was objectionable or how such an objection would have been strategically sound. Regardless, Petitioner has not and cannot show how this had any impact on the outcome of his trial. Furthermore, in his affidavit, trial counsel stated, "[h]ad I objected to Mr. Nichols' cross-examination of Pete as argumentative it would have been overruled, bolstered his position of strength, and drawn unnecessary ire from the Court and the jury." Trial counsel cannot be ineffective for failing to make a meritless objection. *See Jackson*, 150 F.3d at 525-26; *Clark*, 19 F.3d at 966. Petitioner has failed to show deficient performance and this claim should be denied.

10.      *Failure to Object to Questions Regarding Pete's Criminal History*

Petitioner here alleges that counsel was ineffective for failing to object to the prosecutor's questions concerning the details of Petitioner's prior convictions. Trial counsel did not address this claim in his affidavit as he did not have a complete record to adequately respond. Affidavit, pg. 142 (doc. #11-35). However, the prosecutor noted in the state habeas proceedings that it is common strategy for defense attorney's to be forthcoming about a defendant's criminal history when the defendant takes the stand in an effort to make the defendant more believable. State's Answer to Application for Writ of Habeas Corpus, pgs. 9-10 (doc. #11-35). Thus, it would be reasonable strategy to allow Petitioner to be forthcoming about the details of his past criminal history,

particularly since his description of his convictions consisted of sympathetic versions of those events. RR, Vol. 3, pg. 170 (doc. #11-16).  Moreover, Petitioner has failed to establish prejudice.  As outlined by the intermediate appellate court in reviewing Petitioner's claim of trial court error in admitting the evidence, the error was harmless.  As Petitioner has failed to rebut the presumption of trial strategy and has failed to show prejudice, this claim should be denied.

   11.   *Failure to Object to Improper Closing Argument by the Prosecution*

Petitioner asserts that trial counsel performed deficiently by not objecting to the prosecutor's statement during closing argument that "You know Tyrrell Pete shot Julius Stelly.  He said he shot Julius Stelly."  RR, Vol. 4, pg. 25.  Petitioner now claims that this is a false statement.  However, the record simply belies such an assertion as Petitioner did admit to firing the gun at or toward Stelly. RR, Vol. 3, pgs 164-165.  The relevant testimony is as follows:

   Q.   Okay.  So, you put the car in park or was the car already in park?

   A.   It wasn't in park.  When he grabbed for the door, I tried to dip like that and when I done it, I seen the door come open.  That's when I threw the truck in park and reached under the seat.

   Q.   And so, you started firing the gun?

   A.   Yes, sir.

   Q.   Had you ever shot anybody before?

   A.   No, sir.

   Q.   You started firing the gun, and what happens next?

   A.   I started firing the gun.  I seen everybody running.  Mr. Stelly, he was running; but he was the closest to me.  So, he was the one who ended up getting shot.  I wasn't trying to kill him because I was shooting like almost at the ground really to make them all back up; but they were approaching me, all three of them.

   Q.   Now, I mean, you probably weren't really shooting at the ground because several bullets ended up in the house and in the thing, huh?

   A.   I don't know how they got there.  I wasn't directly aiming at anybody.

   Q.   Right.  You are just reacting; and you are firing a gun though, right?

   A.   Yes, sir.

24

Q.    And you fired it at Mr. Daigle –

A.    Yes, sir.

Q.    – initially and then you fired it at Mr. Stelly?

A.    Yes, sir.

RR. Vol. 3, pgs. 164-165 (doc. #11-16).  Petitioner's post-hoc assertion that he did not admit to shooting at or near Stelly despite his trial testimony and defense strategy of necessity defies credulity; any objection would undermine that defense.  Petitioner has failed to show deficient performance and this claim should be denied.

### 12.    Failure to Object to Jury Charge Definitions

Petitioner next alleges that trial counsel performed deficiently when he failed to object to jury charge definitions.  Petitioner asserts that the definitions of "intentionally" and "knowingly" are erroneous, as they state their meaning "in terms of both the nature of conduct as well as the result of conduct."[7]  Petitioner alleges this was in error but offers no authority for such an assertion. Without any legal basis for this claim, Petitioner fails to show how his attorney was allegedly deficient or how he was allegedly prejudiced.  Petitioner's claims here are conclusory and they should be denied.

### 13.    Failure to Object to Lack of "Multiple Assailants" Jury Instruction

Petitioner argues that his trial counsel was ineffective as he failed to object to the lack of instruction on self-defense against multiple assailants.  Petitioner, again, fails to offer any details or legal support for this claim.  Regardless, trial counsel in his affidavit explained the impropriety in using the self-defense justification.

---

[7] Intentionally is defined as "[a] person acts intentionally, or with intent, with respect to the nature of his/her conduct or to a result of his/her conduct when it is his/her conscious objective or desire to engage in the conduct or cause the result."  Jury Charge, pg. 19 (doc. #11-34).  Knowingly is defined as "[a] person acts knowingly, or with knowledge, with respect to the nature of his/her conduct or to circumstances surround his/her conduct when (s)he is aware of the nature of his/her conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his/her conduct when (s)he is aware that his/her conduct is reasonably certain to cause the result."  Id., pg. 20.  The Jury Charge definitions track the exact language of the Texas Penal Code definitions of culpable mental states.  TEX. PEN. CODE § 6.03(a) & (b).

> As a result of these undisputed facts, our trial strategy necessitated using a Chapter 9 justification. I had successfully employed that approach in a number of other assault and murder cases. The problem was that Pete had two prior felony convictions. In essence, by carrying a pistol as a convicted felon, Pete was automatically committing another criminal offense. As a result, the self-defense justification provided for in Section 9.32 of the Penal Code was severely curtailed. As a strategy, therefore, we decided to argue necessity rather than self-defense.

Affidavit, pg. 136 (doc. #11-35); *see also* TEX. PEN. CODE § 9.31(b)(5) ("[t]he use of force against another is not justified if the actor sought an explanation from our discussion with the other person concerning the actor's differences with the other person while the actor was carrying a weapon in violation of Section 46.02."). The record establishes that counsel chose not to use the justification of self-defense, which would include a multiple assailants charge, as part of his trial strategy as Petitioner was unlawfully carrying a weapon as a convicted felon. Petitioner, again, has failed to rebut the presumption of trial strategy and has failed to show prejudice, this claim should be denied

> 14.    *Failure to Object to Jury Documents Discussing Parole and Good Time*

Petitioner next alleges that counsel was deficient in failing to object to the portion of the jury charge where it says "[a]pplicant under laws applicable to this case can earn time off his sentence through good time credit." Petitioner argues this is a false statement intended to provoke the jury to give more time to a defendant. The actual instruction read as follows:

**GOOD TIME CREDIT AND PAROLE:**

> Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn time off the period of incarceration imposed through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignment, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.

> It is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.

> Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, (s)he will not become eligible for parole until the actual time served equals one-half of the sentence imposed or 30 years, whichever is less, without consideration of any good conduct time (s)he may earn. If the defendant is sentenced to a term of less than four years, (s)he must serve at least two years before (s)he is eligible for parole. Eligibility for parole does not guarantee that parole will be granted.

26

It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if (s)he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.

You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

Instructions, pg. 35 (doc. #11-34).

"A substantively correct instruction concerning the effect of the Texas parole laws does not offend the federal constitution." *Galvan v. Cockrell*, 293 F.3d 760, (5th Cir 200) (citing *California v. Ramos*, 463 U.S. 992, 1004-05 (1983) (stating that an accurate instruction on a capital defendant's eligibility for parole or commutation of sentence does not raise a federal constitutional issue) and *Drew v. Collins*, 964 F.2d 411, 415-16 (5th Cir. 1992)). However, when "an instruction amounts to a constitutional error, it still does not entitle a defendant to habeas relief unless there is more than a mere reasonable possibility that it contributed to the verdict." *Id*. (citing *Mayabb v. Johnson*, 168 F.3d 863, 868 (5th Cir. 1999) (citing *Woods v. Johnson*, 75 F.3d 1017, 1026-27 (5th Cir. 1996)). "A federal court sitting in habeas may not grant relief on trial errors unless the petitioner demonstrates that the error 'had a substantial and injurious effect or influence in determining the jury's verdict.'" *Id*. (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)). A jury is presumed to have followed the instructions prohibiting consideration of the extent to which good conduct time and/or parole might be awarded to a defendant. *Id*. (citing *Parker v. Randolph*, 442 U.S. 62, 73 (1979) ("A crucial assumption underlying that system is that juries will follow the instructions given them by the trial judge."), *overruled on other grounds*, *Cruz v. New York*, 481 U.S. 186 (1987)).

In his affidavit, trial counsel stated that he normally does object to this language in the punishment charge as he thinks it is unnecessarily confusing and "essentially tells jurors to consider and then not to consider how parole and good time might operate." Affidavit, pg. 143 (doc. #11-35). While acknowledging that the language is standard in Texas felony punishment charges, counsel

admits he likely should have objected to it.  *Id.*  Regardless, as argued by counsel in his affidavit, Petitioner has failed to show how the outcome of the trial would have been different.  In sum, Petitioner has failed to demonstrate prejudice and this claim should be denied.

          15.     *Seeking a Mistrial Instead of Asking to Continue the Trial with 11 Jurors*

In his final claim of ineffective assistance of counsel, Petitioner argues his first trial counsel was ineffective in moving for a mistrial, rather then agreeing to go to trial with just eleven jurors. Petitioner, however, failed to argue this claim in his state application for writ of habeas corpus and did not give the TCCA a fair opportunity to review the claim.  As this claim is unexhausted and now procedurally barred, it will not be considered here.  *Se*e TEX. CODE CRIM. PROC. ART. 11.07, § 4; *Neville,* 423 F.3d at 480.  Petitioner has also failed to show cause and prejudice for the procedural default, or a fundamental miscarriage of justice.

Finally, with respect all of Petitioner's claims of ineffective assistance of counsel that were exhausted, the state court reviewed and rejected Petitioner's claims.  The state court's decision is presumed to be correct and is entitled to a presumption of correctness under the AEDPA.  28 U.S.C. § 2254(e)(1).  This presumption applies to both implicit and explicit factual findings.  *See Young*, 356 F.3d at 629; *Valdez*, 274 F.3d at 948 n. 11.  Petitioner has failed to rebut the state court's determinations by clear and convincing evidence.

For the reasons set forth above, Petitioner has failed to show either deficient performance or prejudice regarding counsel.  As a result, Petitioner has failed to demonstrate he is entitled to relief with respect to the habeas court's determination that counsel's performance was not unconstitutional. Petitioner has failed to show either that the state court adjudication was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or that the state court adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Accordingly, all Petitioner's ineffective assistance of counsel grounds for relief should be denied.

VI.    *Ineffective Assistance of Appellate Counsel*

Petitioner argues his appellate counsel was ineffective as he never consulted with Petitioner before filing his appeal, he failed to reasonably investigate his case, he failed to argue the insufficiency of the evidence, the *Brady* violations, and the flawed jury charge.

The same two-pronged standard for evaluating ineffective assistance claims against trial counsel announced in *Strickland* applies to complaints about the performance of counsel on appeal. *See Smith v. Robbins*, 528 U. S. 259, 285 (2000) (holding a petitioner arguing ineffective assistance by his appellate counsel must establish both his appellate counsel's performance was objectively unreasonable and there is a reasonable probability that, but for appellate counsel's objectively unreasonable conduct, the petitioner would have prevailed on appeal).    Thus, the standard for evaluating the performance of counsel on appeal requires inquiry into whether appellate counsel's performance was deficient, *i.e.*, whether appellate counsel's conduct was objectively unreasonable under then-current legal standards, and whether appellate counsel's allegedly deficient performance "prejudiced" the petitioner, *i.e.*, whether there is a reasonable probability that, but for appellate counsel's deficient performance, the outcome of the petitioner's appeal would have been different. *Smith*, 528 U.S. at 285.    Appellate counsel who files a merits brief need not and should not raise every nonfrivolous claim but, rather, may select from among them in order to maximize the likelihood of success on appeal.    *Smith*, 528 U.S. at 288; *Jones v. Barnes*, 463 U. S. 745, 751 (1983). The process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail is the hallmark of effective appellate advocacy.    *Smith v. Murray*, 477 U. S. 527, 536 (1986); *Jones*, 463 U.S. at 751-52.

Where, as in this case, appellate counsel presented, briefed, and argued, albeit unsuccessfully, one or more nonfrivolous grounds for relief on appeal and did not seek to withdraw from representation without filing an adequate *Anders* brief, the defendant must satisfy both prongs of the *Strickland* test in connection with his claims of ineffective assistance by his appellate counsel.    *See Roe v. Flores-Ortega*, 528 U. S. 470, 477, 482 (2000) (holding the dual prongs of *Strickland* apply

to complaints of ineffective appellate counsel and recognizing, in cases involving "attorney error," the defendant must show prejudice); *Smith*, 528 U.S. at 287-89 (holding petitioner who argued his appellate counsel rendered ineffective assistance by failing to file a merits brief must satisfy both prongs of *Strickland*). In other words, Petitioner must overcome the presumption that appellate counsel made a sound strategic decision not to present certain issues on appeal. *Moore v. Vannoy*, 968 F.3d 482, 498 (5th Cir. 2020) (citing *Higgins v. Cain*, 720 F.3d 255, 265 (5th Cir. 2013)).

In the present case, appellate counsel raised two points of error in a 25-page brief. Appellate Brief, pgs. 1-32 (doc. #11-4). The two issues presented were whether the trial court committed reversible error in admitting speculation by a witness to support the State's theory of conviction and in allowing the State to elicit evidence concerning the details of prior offenses of appellant admitted into evidence. Petitioner here offers no discussion why appellate counsel should have focused on the other issues he lists to the exclusion of the two points of error that were actually raised. As a result, Petitioner has failed to rebut the presumption of trial strategy and has failed to show prejudice. Petitioner has failed to show the decision by the TCCA in denying this claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d). This claim should be denied.

## VII.    *Constructive Denied of Trial and Appellate Counsel*

Petitioner also alleges that he was constructively denied trial and appellate counsel. As to his trial counsel, Petitioner alleges while counsel was present in the court room, Petitioner was left to "fend for himself at critical times during the proceedings," due to counsel's failure to investigate, his "maldroit [sic] strategy attempt," his failure to file pre-trial motions and general lack of preparedness. As to appellate counsel, Petitioner argues because appellate counsel was denied records relating to his first trial that ended in a mistrial, he was constructively denied a meaningful appeal.

First, as to Petitioner's claim he was constructively denied an appeal as the State failed to provide the appellate court with transcripts from his first trial or the subsequent bond hearing, this claim wholly lacks merit. As outlined above, Petitioner's appeal focused on two points of error relating to trial court error in the second trial. How transcripts from the first trial that resulted in a mistrial or transcripts from a subsequent bond hearing have any relevancy on the two issues actually briefed and argued on appeal is unclear to this court. Regardless, Petitioner has failed to show actual prejudice from these omissions in the record. A "record is 'adequate for full appellate review' so long as it contains the portions necessary to address the alleged errors below. *Higginbotham v. Louisiana*, 817 F.3d 217, 222 (5th Cir. 2016) (citing *Schwander v Blackburn*, 750 F.2d 494, 497-98 (5th Cir. 1985) (quoting *State v. Francis*, 345 So.2d 1120, 1125 (La. 1977)).

Regarding Petitioner's remaining points regarding his claim of constructive denial of counsel, the Constitution guarantees a fair trial for criminal defendants through the Due Process Clause of the Sixth Amendment, which provides defendants the right to have the effective assistance of counsel and largely defines the basic elements of a fair trial. *See* U.S. CONST. AMEND VI; *Strickland*, 466 U.S. at 685. As analyzed above, however, Petitioner has failed to show that counsels' representation were unconstitutional. As the Fifth Circuit has explicitly stated,"where individual allegations of error are not of constitutional stature or are not errors, there is 'nothing to cumulate.'" *Turner v. Quarterman*, 481 F.3d 292, 301 (5th Cir. 2007) (quoting *Yohey v. Collins*, 985 F.2d 222, 229 (5th Cir. 1993)). Here, as set forth above, Petitioner has failed to show any individual errors of constitutional dimension with respect to trial and/or appellate counsel. Accordingly, Petitioner's claims that he was denied due process and a fair trial are without merit and should be denied.[8]

---

[8] Petitioner argues that prejudice should be presumed under *United States v. Cronic*, 466 U.S. 648, 658-62 (1984). *Cronic* only applies, however, when "the circumstances leading to counsel's ineffectiveness are so egregious that the defendant was in effect denied any meaningful assistance at all." *Russell v. Denmark*, 68 F.4th 252, 269 (5th Cir. 2023) (quoting *United States v. Griffin*, 4324 F.3d 330, 364 (5th Cir. 2003) (citing *Gochicoa v. Johnson*, 238 F.3d 278, 284 (5th Cir. 2000)) and citing *Bell v. Cone*, 535 U.S. 685, 695 (2002) (The "most obvious" time *Cronic* applies is when a criminal defendant suffers "the complete denial of counsel.")). As outlined above in detail, this is not such a case.

*VIII.   Prosecutorial Misconduct in Closing Arguments*

Petitioner here complains that the prosecutor stated in closing arguments that Petitioner admitted to shooting the complainant, an element of the charge.  Petitioner, as with his claim of ineffective assistance of counsel, again now asserts he never made such an admission.

The appropriate standard of review for a claim of prosecutorial misconduct on a federal writ of habeas corpus is "the narrow one of due process."  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)).  The relevant question is whether the prosecutor's actions "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Donnelly*, 416 U.S. at 643; *Kirkpatrick v. Blackburn*, 777 F.2d 272, 281 (1985).   The test to determine whether prosecutorial misconduct makes a trial fundamentally unfair is whether there is a reasonable probability that the verdict might have been different had the trial been properly conducted.  *Rogers v. Lynaugh*, 848 F.2d 606, 609 (5th Cir. 1988) (citing *Darden*, 477 U.S. at 1810).  In Texas, the scope of proper jury argument is (1) the summation of the evidence, (2) any reasonable deduction from the evidence, (3) an answer to the argument of opposing counsel, and (4) pleas for law enforcement.  *Westbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000).

Here, as outlined above, the arguments made by the prosecutor were proper as they clearly fell within the summation of the evidence, reasonable deductions from the evidence, and were responsive to the defense arguments.  Again, Petitioner testified that "I started firing the gun.  I seen everybody running.  Mr. Stelly, he was running, but he was the closest to me.  So, he was the one who ended up getting shot . . . .".  RR, Vol. 3, pg. 164 (doc. #11-16).  The record clearly refutes Petitioner's argument that the prosecution somehow misstated or summarized the testimony and engaged in misconduct.  More importantly, Petitioner fails to even argue, let alone show, that this alleged error rose to the level of rendering his trial fundamentally unfair.  Again, Petitioner has failed to show the decision by the TCCA in denying this claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or resulted in a decision

based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d). This claim should be denied.

IX.    *Trial Court Bias*

Petitioner asserts that the trial judge was biased against him because the judge allegedly worked with the victim's wife and made adverse rulings against him. As outlined above, there is no evidence in the record that Trazarra Stelly had any relationship with the victim in this case or that anyone involved in the trial, let alone the trial court, had any knowledge of any such alleged relationship. In fact, in response to Petitioner's state application for writ of habeas corpus, the State reported that it had been unable to find anything to support these accusations and that the trial record suggests that the victim was either not married or separated from his wife, living with his mother and father. *See* State's Answer to Application for Writ of Habeas Corpus, pg. 255 (doc. # 11-34). This claim of trial court bias, as with Plaintiff's claim of ineffective assistance of counsel relating to this alleged relationship, is conclusory and should be denied. Moreover, mere disagreements with rulings made by a judge are almost always insufficient to show bias or prejudice. *Liteky v. Untied States*, 510 U.S. 540, 554-55 (1994). Petitioner has failed to show the decision by the TCCA in denying this claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d). This claim should be denied.

X.    *Denied Right to Jury to Make Deadly Weapon Finding*

Petitioner finally asserts that he was denied his right to a jury to make a deadly weapon finding because the deadly weapon finding was not submitted as a separate issue to the jury. This assertion is belied by the record.

In the jury charge, the definition of aggravated assault with deadly weapon is defined as "[a] person commits the offense of aggravated assault if (s)he commits an assault and *used a deadly weapon*." Charge, pg. 141 (doc. #11-13) (emphasis added). The Verdict Form question then

specifically asked the jury whether they found Petitioner not guilty or guilty of the offense of Aggravated Assault, to which the jury found Petitioner guilty. *Id*., pg. 157. Furthermore, the jury found the defendant guilty "as charged in the indictment" and the indictment alleged that Petitioner "cause[d] serious bodily injury . . . by shooting the Complainant with said firearm." *Id*.; *see also Indictment*, pg. 9 (doc. #11-13). Thus, by its very definition, the jury necessarily made the deadly weapon finding in its guilty verdict. *O'Neal v. Johnson*, 54 F.Supp. 695, 698 (S.D. Tex. June 8, 1999) (citing *Polk v. State*, 693 S.W.2d 391, 394 (Tex. Crim. App. 1985) (Under Texas law, jury's verdict finding defendant guilty "as charged in the indictment," which alleges use of firearm, constituted *de facto* finding that defendant used or exhibited a firearm during robbery.)). Petitioner's claim wholly lacks merit. Furthermore, Petitioner has failed to show the decision by the TCCA in denying this claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d). This claim should be denied.

XI.    *Second Amended Complaint*

After seeking leave, which was granted, Petitioner filed a Second Amended Complaint on August 13, 2021, in what appears to be an effort to add additional records in support of the petition (doc. #21).[9] To the extent Petitioner adds any new claims, the court observes that they are either unexhausted and procedurally barred as they were not fairly presented to the state courts for review and consideration and/or they are barred by the applicable statute of limitations. *See* 28 U.S.C. § 2244(d); *see also Mayle v. Felix*, 545 U.S. 644, 650 (2005) (holding that an amended habeas petition under 28 U.S.C. § 2254 "does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from

_____

[9] The court ordered Respondent to answer the amended petition as new counsel for Petitioner represented that he conferred with counsel for Respondent who allegedly did not oppose answering the petition. By way of Respondent's Supplemental Answer, counsel for Respondent only stated upon conference that did not oppose the Motion to Substitute Attorney, and by doing so, in no way indicated that he agreed to file an answer to the amended petition (doc. #35).

those the original pleading set forth."). Furthermore, "[n]ew claims of ineffective assistance of counsel do not automatically relate back to prior ineffective assistance claims simply because they violate the same constitutional provision. Rather, [courts] must look to whether [the movant's] new claim asserts 'a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth.'" *United States v. Gonzalez*, 592 F.3d 675, 680 (5th Cir. 2009) (quoting *Mayle*, 545 U.S. at 650). Moreover, to the extent Petitioner asks the court to consider the additional thirty exhibits, that comprise over 600 pages, without any explanation or citation as to how the exhibits support any of the established points of error, the court declines to do so. The court notes after a cursory reviw that many of these exhibits have already been provided in the official state court records provided by Respondent. However, to the extent that any of these exhibits are new and are not part of the state court record in this case, the court declines to consider them under the framework of *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (federal habeas review "is limited to the record that was before the state court that adjudicated the claim on the merits); *see also* 28 U.S.C. § 2254(d) In addition, under 28 U.S.C. § 2254(e)(2), new evidence cannot be considered by a federal habeas court if the petitioner "failed to develop the factual basis of a claim in State court proceedings." *Id*.[10]

Recommendation

This petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 should be denied.

Objections

Within fourteen (14) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings of facts, conclusions of law and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(c).

Failure to file written objections to the proposed findings of facts, conclusions of law and recommendations contained within this report within fourteen (14) days after service shall bar an

---

[10] The Court notes that Respondent also asserted these defenses in its Supplemental Answer (doc. #35). More than ample time has passed, yet Petitioner has failed to file a Reply to the Supplemental Answer.

aggrieved party from *de novo* review by the district court of the proposed findings, conclusions and recommendations and from appellate review of factual findings and legal conclusions accepted by the district court except on grounds of plain error. *Douglass v. United Services Auto. Assoc'n.,* 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

SIGNED this 28th day of February, 2024.

_____
Zack Hawthorn
United States Magistrate Judge